249 P.3d 554 (2011)
241 Or. App. 40
STATE of Oregon, Plaintiff-Respondent,
v.
Michael Alan KIRKLAND, Defendant-Appellant.
D062742M; A142167.
Court of Appeals of Oregon.
Submitted December 20, 2010.
Decided February 23, 2011.
Peter Gartlan, Chief Defender, Joshua B. Crowther, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the brief for respondent.
Before BREWER, Chief Judge, and GILLETTE, Senior Judge.
*555 BREWER, C.J.
Defendant appeals from his conviction for negotiating a bad check, ORS 165.065.[1] He asserts that the trial court erred in denying his motion for a judgment of acquittal, because the state failed to prove the elements of the offense beyond a reasonable doubt. We affirm.
In reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Shields, 184 Or.App. 505, 509, 56 P.3d 937 (2002). The pertinent facts are few. Defendant stayed at an inn, sometimes for long periods. He was allowed to pay for his room with personal checks. On June 2, 2006, the inn's manager received a spreadsheet from corporate headquarters indicating that defendant had used two separate checks to pay for lodging that had been returned for insufficient funds. Based on that information, the manager locked defendant out of his room. The manager also called defendant and left a telephone message telling defendant that he could return to his room if he paid his outstanding charges.
On June 4, 2006, after having allowed defendant back into his room, the manager asked defendant to pay for that night's lodging. Defendant wrote the manager a check for $43.19, but told her that "he didn't have any money. That he didn't have the cash to go to the bank." The manager "asked [defendant] to go get the cash for his room for the night, and [defendant] said he didn't have the cash in the bank."
At the conclusion of the state's case, defendant made a motion for judgment of acquittal, arguing:
"I do not think there's any evidence that can be, even in a light most favorable to the state, Judge, they say the check would not be honored by the drawee of the bank. That is speculation on her part. The check was never run. There's no knowledge, there's no evidence to show that the check wouldn't have been honored. It's pure speculation.
"* * * * *
"[T]he state's produced no evidence regarding defendant's mental state, such that he knew there was no money in the account at the time he wrote the checks. At best, the State can point to circumstantial evidence, when he had the conversation with [the manager]."
The prosecutor replied that "certainly the jury can find that the defendant did have knowledge that there would not be sufficient funds. He told [the manager] he did not have the money." The trial court denied defendant's motion, explaining:
"Count 5 is the one I've been concerned about through the course of the trial because I knew that obviously, as the testimony evolved * * * I was concerned that [the check] wasn't processed * * *.
"* * * So I was watching that to see how the State would be able to get past a Judgment of Acquittal, and I think they squeaked past it, in the light most favorable to the State, because of what the witness had testified to regarding his statement saying he didn't have sufficient funds to cover the check."
A jury convicted defendant on the charge of negotiating a bad check. This appeal followed.
Defendant argues on appeal that the trial court erred in denying his motion for a judgment of acquittal because the state failed to adduce evidence (1) that defendant did not *556 have an account with the drawee of the check that he uttered; (2) that there were insufficient funds in his account when he uttered the check; or (3) that the drawee refused to pay the check. According to defendant, those factual circumstances are elements of the offense of negotiating a bad check, because they are listed in ORS 165.065(2)(a) and (2)(b) as kinds of prima facie evidence "of knowledge that the check or order would not be honored." The state replies, first, that defendant failed to preserve that argument and, second, that ORS 165.065 merely requires that an individual make, draw, or utter a check knowing that it will not be honored by the bank or drawee and that, under the proper construction of ORS 165.065, the evidence was sufficient to allow a rational trier of fact to convict defendant of the charged offense.
We reject the state's preservation argument without discussion and turn to the merits of the appeal. In interpreting a statute, we first examine the text of the statute in context and in light of any pertinent legislative history to determine the legislature's intent. State v. Gaines, 346 Or. 160, 171-72, 206 P.3d 1042 (2009). If the intent of the legislature remains unclear, we may resort to general maxims of statutory construction. Id. at 172, 206 P.3d 1042. As noted, ORS 165.065 provides:
"(1) A person commits the crime of negotiating a bad check if the person makes, draws or utters a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.
"(2) For purposes of this section, unless the check or order is postdated, it is prima facie evidence of knowledge that the check or order would not be honored if:
"(a) The drawer has no account with the drawee at the time the check or order is drawn or uttered; or
"(b) Payment is refused by the drawee for lack of funds, upon presentation within 30 days after the date of utterance, and the drawer fails to make good within 10 days after receiving notice of refusal."
Defendant argues that, in listing certain facts that constitute prima facie evidence of knowledge in ORS 165.065(2), "the legislature explicitly described the minimal amount of evidence necessary to meet the knowledge and result elements of the offense." The state replies that "ORS 165.065(2) establishes either a presumption or an inference concerning the mens rea element, whereby the state can rely on certain evidence to avoid a motion for judgment of acquittal. It does not add additional elements to the offense itself." We agree with the state.
ORS 165.065(1) provides that a defendant commits the crime of negotiating a bad check if a defendant "draws or utters a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee." ORS 161.085(8) provides that "knowingly * * * when used with respect to conduct or to a circumstance described by the statute defining an offense, means that a person acts with an awareness that * * * a circumstance so described exists." Thus, reading ORS 165.065 in light of ORS 161.085(8), a defendant commits the crime of negotiating a bad check when he or she draws or utters a check with an awareness that it will not be honored by the drawee.
As we explained in State v. Short, 88 Or. App. 567, 572, 746 P.2d 742 (1987),
"ORS 165.065[(2)(b)] makes a defendant's failure to pay a dishonored check within ten days prima facie evidence of knowledge that the check would be dishonored. State v. Rainey, [298 Or. 459, 693 P.2d 635 (1985)], would permit no more than an inference of knowledge that the check would be dishonored, if the underlying facts are established beyond a reasonable doubt."
(Emphasis in original.) The Supreme Court had clarified in Rainey that, where the legislature provides that certain facts are "`prima facie evidence,'" the legislature "`establishes a presumption.'" 298 Or. at 463, 693 P.2d 635, quoting OEC 311(2) ("A statute providing that a fact or a group of facts is prima facie evidence of another fact establishes a presumption within the meaning of this section."). Accordingly, when the legislature provided that certain circumstances constitute "prima facie evidence" that a defendant *557 uttered a check with knowledge that it would not be honored by the drawee, the legislature did not intend for the circumstances set out in ORS 165.065(2)(a) and (2)(b) to constitute additional elements of the crime. Rather, they constitute prima facie evidence of the defendant's knowledge that a check would not be honored.
The legislative history of ORS 165.065 confirms that interpretation. ORS 165.065 was enacted as part of the comprehensive revision of the criminal code in 1971. The Commentary to the revised code provides:
"This section prohibits issuing or passing `bad checks' or other worthless sight orders for the payment of money. Subsection (1) defines the crime itself and subsection (2) establishes certain prima facie evidence provisions that will be applicable."
Proposed Oregon Criminal Code, Final Draft and Report, 1971, § 161 (emphasis added).
Viewing the evidence in the light most favorable to the state, we conclude that the trial court correctly denied defendant's motion for judgment of acquittal. The manager's testimony that defendant had told her that he "didn't have the cash in the bank" was sufficient to permit a rational trier of fact to find that defendant wrote the manager a check with an awareness that it would not be honored by the drawee.[2]
Affirmed.
NOTES
[1] ORS 165.065 provides, in part:

"(1) A person commits the crime of negotiating a bad check if the person makes, draws or utters a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.
"(2) For purposes of this section, unless the check or order is postdated, it is prima facie evidence of knowledge that the check or order would not be honored if:
"(a) The drawer has no account with the drawee at the time the check or order is drawn or uttered; or
"(b) Payment is refused by the drawee for lack of funds, upon presentation within 30 days after the date of utterance, and the drawer fails to make good within 10 days after receiving notice of refusal."
[2] Defendant does not assert that he was entitled to a judgment of acquittal on the ground that his statement was an uncorroborated confession and that, under ORS 136.425, it could not support a conviction.